**GREENE et al. v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 10714.**

Circuit Court of Appeals, Fifth Circuit.

March 15, 1944.

Frank Stubbeman, of Midland, Tex., and James H. Yeatman, of Houston, Tex., for petitioners.

Joseph M. Jones, Sewall Key, and A. F. Prescott, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Claude R. Marshall, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before HOLMES, WALLER, and LEE, Circuit Judges.

HOLMES, Circuit Judge.

This case involves petitioners' income tax liability in 1938 and 1939 arising from profits earned upon 37 sales of interests in oil and gas leases. In his returns for each year the taxpayer treated his profits as gains resulting from the disposition of capital assets; the Commissioner, asserting that the properties were not capital assets but were held primarily for sale to customers in the ordinary course of business, treated the profits as ordinary income, and made a deficiency assessment. The Tax Court sustained the Commissioner, and, upon the petition for review brought by the taxpayers, this court must decide whether the finding of the Tax Court upon the issue of fact thus presented has a reasonable basis in the evidence.

Petitioners are husband and wife residing in Midland, Texas, and the profits involved were realized from dealings in property of the marital community. The husband managed the community, and handled the transactions relevant here. Prior to 1931 he was an oil scout for the Shell Oil Company; continuously since 1933 he has also engaged in the purchase and sale of mineral interests as a broker, and has bought and sold oil properties as manager of the marital community. He had a brokerage license issued by the State of Texas, maintained an office at Midland, and was well known as a dealer in oil properties throughout the industry in that area. It was conceded before the Tax Court that petitioners were engaged in the trade or business of buying and selling oil

properties, and the narrow issue before us is whether or not those community interests sold in 1938 and 1939 were held primarily for sale in the ordinary course of that trade or business.

In 1938 eighteen mineral leases and interests were sold. One of these had been acquired in 1933, one in 1934, five in 1935, three in 1936, three in 1937, and five in 1938. Nineteen similar properties were sold in 1939, of which one was acquired in 1934, two in 1935, four in 1936, three in 1937, four in 1938, and five in 1939. All dealings in behalf of the community were somewhat restricted because of a limited operating capital, and new purchases usually were made with proceeds from sales. The extent of the community holdings gradually was built up until there were approximately 100 separate oil leases or interests at the time of the hearing in the Tax Court. Mr. Greene attempted to develop some of his leases, and had drilled some producing wells, but none of the properties disposed of in 1938 and 1939 was ·producing.

At the hearing in the Tax Court Mr. Greene testified that he was always ready and willing to sell any property owned by the community if offered a purchase price that he considered good, and that at the time he acquired each property he did not know whether he would hold it for investment or speculation, develop it, sublease it, sell it, or abandon it. It was his general policy to purchase "wildcat" properties and to deal therein in accordance with his best business judgment as to prospects for its successful development. In the year 1939 Mr. Greene's earnings from · his brokerage business abruptly declined and the profits from his dealings in the community property during the two tax years were more than twice his income for the same period from his brokerage commissions.

■ Section 117(a) (1) of the Revenue Act of 1938 excludes from the definition of capital assets property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.[1] The deficiency assessment by the Commissioner imposed upon petitioners the burden of proving that the particular properties sold in 1938 and 1939 were held primarily for investment rather than primarily for resale. There was no direct proof of intent or purpose · even in the testimony of Mr. Greene, and the Tax Court was required to draw an inference as to this ultimate fact from the circumstantial evidence relevant thereto. The burden upon petitioners in this court is to show that the inference so drawn was not warranted by any substantial evidence.[2]

Since it is admitted that the taxpayers were in the business of buying and selling oil properties, at least a substantial portion of the properties owned must have been held primarily for resale in the ordinary course of ˙business. The properties sold were of comparatively recent acquisition, and not one of them was productive of any income at the time it was sold. The substance of petitioners' testimony was to the effect that they had neither the capital nor the inclination to hold for investment more than a chosen few of all the properties held.

· ■ We think the facts were consistent with and justified the inference that the properties sold in 1938 and 1939 were held primarily to be sold in the ordinary course of business.

The decision of the Tax Court is affirmed.

WALLER, Circuit Judge (dissenting).

The taxpayers seek a reversal because, they say, the evidence before the Tax Court shows that the properties sold in 1938 and 1939 were not held by petitioners primarily for sale to customers in the ordinary course of their trade or business, and, therefore, the profits from the sales were long-term capital gains as defined by Sec. 117 of the Revenue Act of 1938.[1] I

---

[1] 52 Stat. 500, 26 U.S.C.A. Int.Rev. Acts, page 1061.

[2] Dobson v. Commissioner, 64 S.Ct. 239.

[1] "(1) Capital assets.—The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in Section 23($l$);

\* \* \* \* \*

"(4) Long-term capital gain.—The term 'long-term capital gain' means gain from the sale or exchange of a capital asset

agree. The principal business of the Taxpayer had been blocking up leases for major oil companies, but as an incident to such business he frequently acquired oil leases, mineral rights, or the fee-simple title to parcels of land for his own account. He was endeavoring to obtain for himself some oil producing property. Eleven of the properties so acquired were drilled for oil. Some were abandoned. Some were sold. Some were farmed out to others. What happened to his holdings depended on whether oil was found on his or nearby property, or whether off-set wells were to be drilled, or whether someone else wanted the lease worse than taxpayer did, or whether the prospect of oil production in the vicinity was proximate or remote. The fact that one in his financial circumstances developed, or caused to be developed, for oil only eleven parcels is no proof that taxpayer acquired and held the other parcels primarily for sale to customers in the ordinary course of trade. The preferred definition of customer by Webster's New International Dictionary is "one who regularly or repeatedly makes purchases of, or has business dealings with a tradesman or business house; one who customarily has dealings with a business establishment". In Weinhouse v. Cronin, 68 Conn. 250, 36 A. 45, it was said:

"A customer is a person with whom a business house or business man has regular or repeated dealings. The plaintiff being a real-estate broker, his customer would be one for whom he had acted in the buying or selling of real estate."

See also Lyons v. Otter Tail Power Co., 70 N.D. 681, 297 N.W. 691. Under the definitions, the only "customers" the taxpayer had were the major oil companies and it was not shown that he held these properties for sale to them, or that he sold any of the properties in question to them.

The Tax Court seems to have been influenced in its conclusions by its findings that petitioner "had some wells drilled over a period of years and is definitely in the oil business". So is The Texas Company, but that fact is no proof that The Texas Company is holding leases primarily for sale to its customers in due course. The law does not intend to deny a real estate broker the same privilege in the sale of his own land that it allows any other taxpayer who sells his capital assets, unless the selling of his own land is his primary business.

The fact that taxpayer was willing to sell anything that he owned if he could get his price is persuasive of nothing except that taxpayer is not different from the average person in that respect.

The taxpayer's purpose in the acquisition of the asset is the test rather than the fact that he sold it. Did he buy the asset to put into his stock in trade with the idea of resale in due course, or did he buy it, as he testified (without contradiction), with the idea to drill if production got close; to sell if prospects were not good; to forfeit if lease was worthless; to farm out perhaps; and always with the idea of being governed in his course as to each lease by subsequent events? Holding a lease until one could see "how the cat hops" is not holding it primarily for sale to customers in due course.

The recent case of Dobson v. Commissioner of Internal Revenue, 64 S.Ct. 495, does not require an affirmance of the present case because there is no factual controversy here. The facts are not now, and have never been, in dispute. We, therefore, have the problem of taking a given and admitted state of facts and determining what the law under such facts is. I have no complaint with the finding of facts of the Tax Court, but in its application of the statute to those facts I think that the Tax Court was in error and its decision should be reversed.

---

held for more than 18 months, if and to the extent such gain is taken into account in computing net income; * * *

"(b) Percentage taken into account.— In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

"100 per centum if the capital asset has been held for not more than 18 months;

"66-2/3 per centum if the capital asset has been held for more than 18 months but not for more than 24 months;

"50 per centum if the capital asset has been held for more than 24 months."