## BROWN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10948.

Circuit Court of Appeals, Fifth Circuit.
June 23, 1944.

J. L. Lockett, of Houston, Tex., for petitioner.

Howard P. Locke, Sewall Key, and A. F. Prescott, Sp. Asst. to Atty. Gen., Samuel

O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Bernard D. Daniels, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before SIBLEY, and LEE, Circuit Judges.

LEE, Circuit Judge.

This case involves deficiencies in income tax found by the Tax Court to be due by petitioner for the calendar years 1937, 1938, and 1939, respectively. The sole question is whether the net profit to the taxpayer from the sale of lots in the taxable years was capital gain or ordinary income. The applicable statutes and regulations are set forth below.[1]

The taxpayer and her husband owned some 500 acres of unimproved land near a settlement called Woster, about three miles from Baytown, in Harris County, Texas. The land was community property and had been used for grazing cattle. The husband died in 1928, and his will devised his undivided half interest in the land to the taxpayer. Thereupon she became sole owner of the entire tract. The land, decedent's sole asset, was covered by mortgage to a Houston, Texas, bank to secure an indebtedness due it of approximately $20,000. The bank in 1930 demanded payment, and a son of the taxpayer obtained a new loan for her from another Houston bank, sufficient in amount to pay the existing indebtedness and leave a surplus from which to pay interest on the new loan until the land could be sold. Petitioner listed the land for sale early in 1929, with a licensed real estate broker named Montgomery, in Houston, Texas. His attempts to sell the property were unsuccessful and it was then listed for sale, at his suggestion, with other real estate agents, with no results.

In 1936 Montgomery sold two small parcels of the tract, and in 1937 he became convinced that he could dispose of the land if it were subdivided. He consulted with the taxpayer and her children and was authorized to sub-divide the property and develop it for sale, provided it could be independently financed. No formal contract was entered into between the parties, and all arrangements were made by them orally and through correspondence. The Tax Court found that their relationship in regard to the land was that of principal and agent. The taxpayer knew nothing about business and her children knew nothing about the real estate business, so all details were left to Montgomery. He platted and laid out two subdivisions of 106 lots in 1937, and two other subdivisions

---

1 Revenue Act of 1936, c. 690, 49 Stat. 1648:

"Sec. 22. Gross Income

"(a) General Definition. 'Gross income' includes gains, profits, and income * * * of whatever kind * * * from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from * * * the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever." 26 U.S.C.A. Int.Rev. Acts, page 825.

"Sec. 117. Capital Gains and Losses

* * * * * *

"(b) Definition of Capital Assets. For the purposes of this title, 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." 26 U.S.C.A. Int.Rev.Acts, page 874.

Sections 22(a) and 117(a) (1) of the Revenue Act of 1938, c. 289, 52 Stat. 447, and of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, §§ 22(a), 117 (a) (1), are the same so far as are material here as sections 22(a) and 117 (b) of the Revenue Act of 1936.

Treasury Regulations 94, promulgated under the Revenue Act of 1936:

"Art. 117-1. Meaning of capital assets. The term 'capital assets' includes all classes of property not specifically excluded by section 117(b). In determining whether property is a 'capital asset,' the period for which held is immaterial."

Article 117-1 of Treasury Regulations 101, promulgated under the Revenue Act of 1938, and section 19.117-1 of Treasury Regulations 103, promulgated under the Internal Revenue Code, are the same as far as are material here as Article 117-1 of Treasury Regulations 94.

of 94 lots in 1938 and 1939. No improvements were made on the lots themselves but streets were cleared, graded, and shelled; storm sewers were put in at street intersections; gas and electric lines were constructed; and a water well was dug. Taxpayer executed the plats to all subdivisions and dedicated to public use the streets and parks.

Montgomery received a commission of 5% on sales in 1937, and a commission of 10% in subsequent years. In 1937, 32 lots were sold for $26,661.03; in 1938, 29 lots brought $30,706.35; and in 1939, 19 lots were sold for $15,955.00. Subsequent to 1939, additional acreage from the original tract was platted in 131 lots, and subsequent to that year 42 lots were sold. The taxpayer treated the profit each year as a long-term capital gain, and reported as taxable income only the specified percentage provided by statute as the amount subject to the tax. The Commissioner treated the entire profit as ordinary gains and the Tax Court sustained the Commissioner, holding that the lots sold were not capital assets but were assets held by the taxpayer primarily for sale to customers in the regular course of the taxpayer's business.

The facts, we think, clearly sustain the Tax Court. Section 117(b) of the statute defines capital assets as "property held by the taxpayer * * * but does not include * *. * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." While the petitioner did not personally conduct the business of selling lots she did conduct it through another.[2] She sold to all comers, subdividing and developing to attract purchasers. Anyone who wished to buy could do so. Her sales were not isolated transactions; neither were they casual rather than continuing.[3] They were substantial and frequent. In the taxable

years 80 lots for a total sales price of $73,322.38 were disposed of.

In Ehrman v. Commissioner, 9 Cir., 120 F.2d 607, 610 certiorari denied, 314 U.S. 668, 62 S.Ct. 129, 86 L.Ed. 534, the taxpayers inherited property which was put up for sale without result. Later, as here, the land was subdivided for sale into lots. The taxpayers, as here, conducted their business through an agent, paying him a stipulated commission. The Court said:

"We fail to see that the reasons behind a person's entering into a business—whether it is to make money or whether it is to liquidate—should be determinative of the question of whether or not the gains resulting from sales are ordinary gains or capital gains. The sole question is—were the taxpayers in the business of subdividing real estate? If they were, then it seems indisputable that the property sold falls within the exception in the definition of capital assets in the statute above quoted —that is, that it constituted 'property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.' "[4]

In Snell v. Commissioner, 5 Cir., 97 F.2d 891, 893, this Court said:

"The fact that he [the taxpayer] bought no additional lands during this period does not prevent his activities being a business. He merely had enough land to do a large business without buying any more. He was not reselling land in the condition in which he bought it, but was subdividing and platting it and sometimes improving it, so as to make wild lands into town lots, thus adding the business element of development. All was done with such purpose, system and continuity as well to constitute it a business."[5]

The decision of the Tax Court is correct. It is accordingly

Affirmed.

[2] Welch v. Solomon, 9 Cir., 99 F.2d 41.

[3] Kales v. Commissioner, 6 Cir., 101 F.2d 35, 122 A.L.R. 211; Miller v. Commissioner, 9 Cir., 102 F.2d 476.

[4] In Flint v. Stone Tracy Co., 220 U. S. 107, 171, 31 S.Ct. 342, 357, 55 L.Ed. 389, Ann.Cas.1912B, 1312, the Supreme Court defined business in the following language: " 'Business' is a very comprehensive term and embraces everything about which a person can be employed. * * * 'That which occupies the time, attention, and labor of men for the purpose of a livelihood or profit.' "

[5] See also Richards v. Commissioner, 9 Cir., 81 F.2d 369, 106 A.L.R. 249; Welch v. Solomon, 9 Cir., 99 F.2d 41; Commissioner v. Boeing, 9 Cir., 106 F. 2d 305, certiorari denied, 308 U.S. 619, 60 S.Ct. 295, 84 L.Ed. 517; Oliver v. Commissioner, 4 Cir., 138 F.2d 910; Greene v. Commissioner, 5 Cir., 141 F. 2d 645; and Gruver v. Commissioner, 4 Cir., 142 F.2d 363.