## THREE STATES LUMBER CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9065.

Circuit Court of Appeals, Seventh Circuit.

Nov. 26, 1946.

Wilbur A. Giffen, of Chicago, Ill., for petitioner.

Douglas W. McGregor, Asst. Atty. Gen., Sewall Key, A. F. Prescott, and Mrs. Muriel S. Paul, Attys., Dept. of Justice, and J. P. Wenchel, and Charles E. Lowery, Bureau of Int. Rev., all of Washington, D. C., for respondent.

Before, MAJOR and MINTON, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

The Commissioner of Internal Revenue declared a deficiency in petitioner's excess profits tax for the calendar year 1941, upon the basis that certain gains realized by petitioner constituted ordinary income subject to excess profits tax instead of gains from sales of capital assets held for more than eighteen months which are expressly excluded from excess profits tax. The taxpayer petitioned for redetermination by the Tax Court and that court entered an order sustaining the Commissioner. The taxpayer now petitions for a review of that order.

At the outset we are confronted with the question of whether the decision of the Tax Court is such that we may review it. The limitations upon the proper scope of judicial review of a decision of the court have been discussed by the Supreme Court in several cases. Thus, in Dobson v. Commissioner, 320 U.S. 489, at page 501, 64 S.Ct. 239, at page 246, 88 L. Ed. 248, the court said: "All that we have said of the finality of administrative determination in other fields is applicable to determinations of the Tax Court. Its decision, of course, must have 'warrant in the record' and a reasonable basis in the law. But 'the judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body.'" The court concluded that, under the circumstances presented, the Tax Court had made a proper adjustment of the tax basis; that this was purely an accounting problem and, therefore, a question of fact for the Tax Court to determine, saying: "The error of the court below consisted of treating as a rule of law what we think is only a question of proper tax accounting." In Trust of Bingham v. Commissioner, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670, the court said, 325 U.S. at page 371, 65 S.Ct. at page 1235, 89 L.Ed. 1670: "The questions whether, on the facts found, the expenses in question are nondeductible, either because they were not to produce income or because they were related to the management of property which was not held for the production of income, turn in this case in the meaning of the words of § 23(a) (2) [26 U.S.C.A. Int.Rev.Code, § 23(a) (2)] 'property held for the production of income.' They are therefore questions of law, decision of which is unembarrassed by any disputed question of fact or any necessity to draw an inference of fact from the basic findings. See Commissioner v. Scottish American Investment Co., supra [323 U.S. 119, 65 S.Ct. 169]. They are 'clear cut' questions of law, decision of which by the Tax Court does not foreclose their decision by appellate courts, as in other cases, Dobson v. Commissioner, supra, 320 U.S. [at pages] 492, 493, 64 S.Ct. [at page] 242, 88 L.Ed. 248, although their decision by the Tax Court is entitled to great weight." The court further pointed out: "whether the applicable statutes and regulations are such as to preclude the decision which the Tax Court has rendered, is, as was recognized in Dobson v. Commissioner, supra, 320 U.S. [at pages] 492, 493, 64 S.Ct. [at page] 242, 88 L.Ed. 248, a question of law reviewable on appeal." In a footnote the court listed a number of decisions in which it had re-examined, as matters of law, determinations of the Tax Court of the meaning of the words of a statute as applied to facts found by that court. In John Kelley Co. v. Commissioner, 326 U. S. 521, 66 S.Ct. 299, 304, the court held that the question presented was one of fact, saying: "These cases now under consideration deal with well understood words as used in the tax statutes—'interest' and 'dividends.' They need no further definition. * * * The Tax Court is fitted to decide whether the annual payments under these corporate obligations are to be classified as interest or dividends."

Here the facts are undisputed and the strict findings of fact of the Tax

Court are beyond controversy. The conclusion to which petitioner objects is that of the court to the effect that "The profits which the petitioner realized in 1941, were realized from the sale of land which the petitioner was holding primarily for sale to customers in the ordinary course of its trade of business. * * * We conclude that the petitioner held its property primarily for sale to customers in the ordinary course of its business and that that property was not a capital asset within the meaning of Section 117(a) (1) [26 U.S. C.A. Int.Rev.Code, § 117(a) (1)]."

The correctness of this conclusion of law, involving the interpretation of the statute and its application to undisputed facts, is questioned. In other words, the inquiry is whether this opinion, in the words of the Supreme Court, had "warrant in the record and a reasonable basis in law" and, again in the words of the Supreme Court, whether there is "a rational basis" for the conclusion. The question of whether upon the undisputed facts, the income in question was realized from the sale of land held primarily for sale to customers in the ordinary course of its business is, like the question in the Bingham case, one of law for the court; that is, whether the applicable statutes are such as preclude the decision that the Tax Court has rendered. The conclusion of the Tax Court raises a clear-cut question of law within the words of the Bingham case, decision of which by the Tax Court does not foreclose review although that "court's decision is entitled to great weight." We think this analysis is in accord with the various decisions of the Supreme Court. We encounter also the further question of whether there is any evidence to support the conclusion.

The undisputed facts as found by the Tax Court are: "The petitioner was organized as a corporation in 1893 under the laws of Wisconsin to engage in the business of manufacturing lumber. It filed its income tax return for 1941 with the collector of internal revenue for the first district of Illinois. It did not file any excess profits tax return for that year.

"The petitioner acquired many acres of timberlands in Mississippi County, Arkansas, the last in 1914. The petitioner cut the timber from these lands and manufactured it into lumber. The business of cutting the timber and manufacturing it into lumber was completed in 1919. Within a few years thereafter, the petitioner disposed of its mill, equipment, and remaining supply of lumber. It owned about 17,000 acres of land from which the merchantable timber had been cut. About 4000 acres of this land was under cultivation. The remainder of it had never been cleared. Much of the latter was wet for a good part of the time and practically all of it was covered with second growth timber, stumps, and thick underbrush.

"The petitioner desired to sell all of its land. It was unable to sell the land in large blocks. It employed a man in 1922 to take charge of and sell this land. He gave all of his time until 1929 and thereafter one-half, to this work. The petitioner also employed to assist this man, a bookkeeper-stenographer and another man who spent most of his time in the office on the property, but who spent some of his time in showing the land to prospective purchasers. They gave full time until after 1935. It employed no others. It paid no commissions. The petitioner spent some money in 1923 for advertising the land in local papers and farm journals and in putting up posters on the land itself. The petitioner did not clear any of the land for sale or make any improvements thereon. The land was benefited from time to time by drainage ditches of various drainage districts and by some new public roads which were built. The petitioner surveyed tracts wherever necessary to establish boundaries in connection with sales. The petitioner frequently loaned money, for the purchase of equipment and the planting of crops, to the people with whom it had contracted for the lease or sale of land. The petitioner held out the land for sale to any white persons who cared to purchase any amount of land consisting of ten or more acres. Some of the land was leased with an option to purchase. Parcels of the land

ranging in size from 10 to 3200 acres were sold from time to time.

"All of the land had been disposed of or placed under contracts of sale by the close of 1935. Most of the land sold after 1931, was sold on installment contracts under which the purchaser would be allowed a few years in which to clear the land and get it under cultivation and then would be required to pay to the petitioner a specified number of bales of cotton for a period of years.

"Its income for 1941 computed from these sales on an installment basis amounted to $86,813.03. It concedes that it had aside from this, ordinary income of $12,994.72. $99,807.75, the total of the two amounts just mentioned, was reported by the petitioner on its income tax return as long-term capital gains. It did not file any excess profits tax return for 1941.

"The Commissioner, in determining the deficiency, has treated the entire amount of $99,807.75 as ordinary income for excess profits tax purposes."

Upon these facts the Tax Court concluded that sales of cut over timber land were not sales of capital assets within the meaning of Section 117(a) (1) of the Internal Revenue Act, which defines capital assets as property held by a taxpayer but not including stock in trade of the taxpayer or "property held by a taxpayer primarily for sale to customers in the ordinary course of its business." It was the court's conclusion that petitioner was not within the exception of Section 117 but that the property sold was held by the taxpayer primarily for sale to customers in the ordinary course of its trade or business.

■ We think there is no rational basis for this conclusion in the facts presented. It is perfectly obvious that petitioner had bought the land for the primary purpose of producing lumber and that, having exhausted the timber, it no longer had any use for it and desired to dispose of it. Petitioner let it be known that the lands were for sale and kept one man, a stenographer and a helper in its office for the purpose of contacting prospective purchasers and completing sales and if, when sales were completed, any questions as to the proper boundary lines arose, had surveys made in order to establish those lines. The land was wet and covered with stumps and underbrush. The liquidation progressed slowly not only because of the physical condition of the land and lack of demand for such property but also because of difficulties encountered in the nationwide depression. These facts are consistent only with a desire and attempt to get rid of capital assets which no longer furnished income. Petitioner bought no additional property. It merely tried to liquidate the remaining unproductive assets, selling first the saw mill and, later, as it could, from time to time, various parts of the entire acreage until all was disposed of by 1935. Its action was not unlike that of a court liquidation of an insurance company holding real estate in various states and compelled to liquidate for the benefit of creditors. Such liquidation can not be forced over night, especially where the land is of the character involved here. We think all of the activities embraced in the findings of fact disclose nothing more than activities incidental to an orderly liquidation; that there is no "warrant in the record," no "rational basis," for a conclusion that petitioner held this land primarily for sale to customers in the ordinary course of its trade or business but that rather the facts disclose beyond peradventure that it held the lands primarily for the purpose of cutting the timber and found itself, when the timber was cut, in the position of having unproductive assets to liquidate which it disposed of in ordinary fashion incidentally to winding up its primary business. Indeed, we believe that there is no substantial evidence to support the conclusion that petitioner was engaged in business primarily for the purpose of selling land to customers in the ordinary course of its trade or business.

The judgment is reversed.