**TRAPP v. UNITED STATES.**

Civ. No. 3066.

United States District Court
W. D. Oklahoma.

Sept. 11, 1948.

Ram Morrison and Chas. H. Garnett, both of Oklahoma City, Okl., for plaintiff.

Robert E. Shelton, U. S. Atty., of Oklahoma City, Okl., and Lester L. Gibson, Sp. Asst. to the Atty. Gen., for defendant.

BROADDUS, District Judge.

*Jurisdiction.*

1. This action is to secure a refund of income taxes paid to H. C. Jones, Collector of Internal Revenue for the United States within Oklahoma. As Jones was not the collector at the time the suit was filed, it was properly filed against the United States in the Western District of Oklahoma. 28 U.S.C.A. § 1346.

2. Plaintiff filed the required income tax return for the calendar year 1940 and paid the tax calculated thereon. Subsequently the Commissioner of Internal Revenue assessed additional tax and interest in the amount of $2,534.21 which plaintiff paid November 16, 1944. On October 30, 1945, he filed with the above Collector a claim for refund. The Commissioner of Internal Revenue having failed to render a decision on that claim in six months, this action was filed June 11, 1946. As it was begun after the expiration of the period of six months, and within two years after the expiration of such period, the action may be maintained. 26 U.S.C.A. § 3772(a) (1, 2).

*Items Agreed Upon at the Trial*

3. Three matters contained in the controversy were agreed upon by the parties at the trial of the case. Though these findings of fact and conclusions of law will not treat them, they will be covered by the journal entry of judgment. Those matters were the depletion and depreciation on certain oil properties alleged to have been owned jointly by the taxpayer and his wife in. the respective amounts of $1,527.65 and $302.73; allowance of the $1,251.59 repair bill on taxpayer's former home as deductible expense to the extent of $751.59 with the remaining $500 to be capitalized; and refund to taxpayer of $473.32 conceded by the government to have been a clerical error in the deficiency assessed and collected.

*Alleged Partnership of Trapp and Wife*

4. Prior to the marriage of the taxpayer and Lou Strang Trapp in 1907, she had a small estate. The plaintiff's evidence fails and the preponderance of evidence fails to establish that Mrs. Trapp contributed any consequential portion of such estate to the taxpayer for his individual use or for conducting a joint enterprise in behalf of taxpayer and his wife. She remains silent as to such contribution. For several years after marriage the only bank account of the Trapps was in her name. Upon the suggestion of the bank, the account was changed to the name of the taxpayer and his wife. Mr. Trapp served a term as state auditor shortly after statehood and at the expiration of that office engaged in the purchasing and marketing of municipal bonds. He was lieutenant governor from 1915 to November, 1923, and governor from November, 1923, until January of 1927. Thereafter, he became successful in the oil leasing and production business which has continued to be the line of his vocational endeavor.

5. The businesses of the taxpayer have been conducted by Trapp. Mrs. Trapp has never taken an active part in any of the

businesses. In 1935, for the first time, taxpayer divided his income between himself and his wife and then only for his federal income tax return. Between that year and the year in question, 1940, he continued to make equal division of his income with his wife on income tax returns.

6. The Trapps never filed a partnership information tax return. During the years of their marriage there has never been a written agreement of partnership. Purchases were all made in Trapp's name, as a general rule, and neither Trapp nor his wife held out any of Trapp's ventures as partnership transactions. On the contrary, he operated and carried on all the business ventures as his own. The joint bank account and the adding of Mrs. Trapp's name to the investment account of the oil business in 1938 did not establish a partnership. It is clear that the withdrawals by Mrs. Trapp were only for household expenses, clothes and other housewife expenditures.

7. The long course of conduct heretofore recited strongly refutes an assumption of partnership, or joint interest in property on the part of the Trapps. The taxpayer's evidence in that respect is not sufficiently strong to overcome the Commissioner's finding that there was no partnership. When the taxpayer failed to produce evidence sufficient to overcome the Commissioner's ruling and failed to establish a substantial contribution by Mrs. Trapp to the taxpayer, the foundation of a common fund, a common property or of partnership existence and ownership no longer existed, for taxpayer proceeded upon the theory of contribution by Mrs. Trapp as a basis of common ownership and upon no other.

*Conclusion of Law*

 A. The Commissioner's ruling that the Trapps were not partners presumptively is correct and the plaintiff has the burden of overcoming such presumption by persuasive evidence. Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 286, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135; Wickwire v. Reinecke, 275 U.S. 101, 48 S.Ct. 43, 72 L.Ed. 184; Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed.

212. Whether a partnership existed is not a matter of Oklahoma law, but is governed by the interpretation of federal tax law and the federal cases. Commissioner of Internal Revenue v. Tower, supra; Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679. The plaintiff, having failed to establish a genuine partnership within the meaning of 26 U.S.C.A. §§ 181 and 182, may not escape upon this issue any tax on income earned by him and due under 26 U.S.C.A. § 22(a).

*The Effect of An Agreed Judgment Pertaining to 1935 Taxes and Whether the Income From the Texas Property Was Community Income*

8. The preceding findings and conclusion of law do not dispose of the question of whether certain income from Texas oil properties, reported as equally divided in the 1940 income tax returns, was properly divided between the Trapps as community income. The largest part of the deficiency tax assessed against the taxpayer was based on disallowance of the division between husband and wife of the income from Texas properties.

9. The taxpayer for the year 1935 returned the income from the Texas oil properties as community income of himself and his wife. The division was disallowed and a deficiency assessed. Administrative proceedings for refund were had and, upon refusal, suit was filed with the Board of Tax Appeals seeking allowance of the refund. Therein the taxpayer complained of the deficiency assessment because of the failure of the Commissioner to recognize the income from the Texas oil properties as community income under the Texas law to be reported one-half by each of the Trapps. Though the title to the property was taken by Trapp in his name, he asserted the consideration for such property was personal services rendered by him in Texas in obtaining the properties and by funds of himself and wife. He filed in the case a supporting affidavit.

10. The Tenth Circuit Court of Appeals in August of 1939 in the case of Hammonds v. Commissioner, 106 F.2d 420, held that in a community property state

the law of such state applied to all acquisition of lands therein by married persons though they might be non-residents. After this decision and considerable negotiations the deficiency was calculated according to taxpayer's contentions. The stipulation and order were based upon such calculation. There was no stipulation of facts and the record fails to show that the Tax Court passed upon the question here presented notwithstanding an agreed settlement may have been had between the parties upon plaintiff's theory of common ownership.

11. There was never a trial of the case. A stipulation was agreed upon stating the amount of a deficiency, which deficiency excluded any tax upon the one-half of the income from the Texas properties attributed to the income of Mrs. Trapp. Upon this stipulation an order was entered May 15, 1940, which recited: "Ordered And Decided: That there is a deficiency in federal income tax for the year 1935 in the amount of $643.32." The order was pro forma and not on the merits.

*Conclusions of Law*

■ B. Issues "actually litigated" in federal income tax proceedings operate as an estoppel in any subsequent action in which the point to be decided is the same as that litigated in the preceding action. Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715; Tait v. Western Maryland Railway Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405; City of New Orleans v. Citizens' Bank of Louisiana, 167 U.S. 371, 17 S.Ct. 905, 42 L.Ed. 202; Cromwell v. Sac County, 94 U.S. 351, 24 L.Ed. 195. In cases involving income taxes in different taxable years, the principle of estoppel by judgment has application only when the second suit is identical in all respects with that decided in the first proceeding. Commissioner v. Sunnen, supra, 333 U.S. 599, 68 S.Ct. 715. Collateral estoppel by judgment in tax cases should be narrowly applied (Pelham Hall Co. v. Hassett, 1 Cir., 147 F.2d 63) and the identity of the controlling facts must be clearly shown upon the record. Gillespie v. Commissioner of Internal Revenue, 10 Cir., 151 F.2d 903. The record herein failing to show an order based upon an actual determination of either fact or law, the rule of estoppel by judgment is without application. Riter v. Commissioner, 3 T.C. 301; Hartford-Empire Co. v. Commissioner, 2 Cir., 137 F.2d 540; and see Almours Securities, Inc., v. Commissioner, 35 B.T.A. 61; Volunteer State Life Insurance Co. v. Commissioner, 35 B.T.A. 491; Blaffer & Co. v. Commission, 5 Cir., 134 F.2d 389.

■ C. The growth of the principles controlling the effect of partnership relations between members of a family and the distribution of income for federal tax purposes in such cases has altered to such an extent since the settlement of the 1935 income taxes and the entry of the pro forma judgment thereon, that such settlement or said judgment has no longer any effect under the application of the principle of collateral estoppel by judgment. Commissioner v. Sunnen, supra; Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135.

*The Nature of the Income from the Texas Leases*

■ 12. The King, Crisp and Bob White leases in Texas were purchased by taxpayer in 1932 with cash and with personal services rendered by Trapp in Texas in obtaining the leases. To the extent of the services the property is community property and to the same extent is the income therefrom. What has been heretofore determined in Findings No. 4 to 7, inclusive, applies here.

13. Trapp acquired the King, Crisp and Bob White leases sometime after August, 1931, and before January 1, 1932. The titles to these leases were involved and Trapp gave a portion of his time and services to litigation and title adjustments and matters incidental thereto. He also developed the properties and managed their operation. The amount of acreage involved in each lease was small. The taxpayer drilled a producing well on the King lease in January of 1932, a producing well on the Crisp lease in March of 1932 and a producing well on the White lease in June of 1932. During the month of August, 1934, and to

March 1, 1938, Trapp drilled four additional wells on the King lease. He drilled a second well on the White lease in June of 1939 and another well, well No. 6 on the King lease in July of 1939 and a second well on the Crisp lease in December of 1940. Trapp's services in acquiring the respective leases, their development and their management was similar in nature and was rendered at about the same time. During this period Trapp was engaged in other business ventures which required a substantial portion of his time and abilities. It is difficult to determine definitely the time required in the performance of the services with reference to the leases but such time and the value of such services have been apportioned as nearly as possible from the record between the three. The services enhanced the value of the property to the extent and during the periods hereinafter set forth.

14. The services have been valued and fixed as to the periods of time corresponding as nearly as possible to the development periods shown in the record.

a. The cost of acquiring the King lease in the period from August 1, 1931, to and including December 31, 1931, for quieting title and other similar matters was a total of $6,822.35. The total cost of the development of the property was $63,721.92, the time of these expenditures for development being fixed as shown in Schedule 7 of Plaintiff's Exhibit 32. The value of the King lease was increased by Trapp's services from August 1, 1931, to December 31, 1931, in the amount of $1,000; from January 1, 1932, to August 1, 1934, in the amount of $2,850; from August 1, 1934, to March 1, 1938, in the amount of $6,150; from March 1, 1938, to January 1, 1941, in the amount of $1,720.

b. The cost of acquiring the Crisp lease in the period from August 1, 1931, to and including December 31, 1931, for quieting title and other similar matters was a total of $4,405.00. The total cost of the development of the property was $20,915.66, the time of these expenditures for costs of development being fixed as shown in Schedule 7 of Plaintiff's Exhibit 32. The value of the Crisp lease was increased by Trapp's services from August 1, 1931, to December 31, 1931, in the amount of $1,-000; from January 1, 1932, to August 1, 1934, in the amount of $2,850; from August 1, 1934, to March 1, 1938, in the amount of $2,150 and from March 1, 1938, to January 1, 1941, in the amount of $1,720.

c. The cost of acquiring the White lease in the period from August 1, 1931, to and including December 31, 1931, for quieting title and other similar matters was a total of $4,884.80. The total cost of the development of the property was $17,337.25, the time of the expenditures for costs of development being fixed as shown in Schedule 7 of Plaintiff's Exhibit 32. The value of the White lease was increased by Trapp's services from August 1, 1931, to December 31, 1931, in the amount of $1,000; from January 1, 1932, to August 1, 1934, in the amount of $1,400; from August 1, 1934, to March 1, 1938, in the amount of $1,025 and from March 1, 1938, to January 1, 1941, in the amount of $1,720.

While the time and cost of acquiring the lease and the litigation has been fixed in this paragraph as to each of the leases from August 1, 1931, to and including December 31, 1931, it has been done as a matter of convenience and the amount allowed upon the respective leases is for the cost of acquisition, quieting title and other incidental costs regardless of the time when the services were performed.

15. The Moseley, Milas and Fenn leases were purchased by the taxpayer in partnership with one Blankenship formed for that purpose. Each contributed one-half of the purchase price. Mrs. Trapp had no interest in the property.

*Conclusion of Law*

D. In community property states the marital rights in lands are regulated by the law of the situs, regardless of spouses' residence. Hammonds v. Commissioner, 10 Cir., 106 F.2d 420. The rule is subject to the qualification that the

separate character of funds or property, given in exchange for property, is transmitted to the property acquired. Noble v. Commissioner, 10 Cir., 138 F.2d 444; Hammonds v. Commissioner, supra. The money borrowed by Trapp and any cash Trapp may have had on hand which went into the Moseley and Milas leases was his separate property and his interest in the partnership leases was therefore separate property. It follows that the income therefrom should have been reported on his 1940 return without division. Noble v. Commissioner, supra. This is equally true as to the cash used in purchase of the King, Crisp and Bob White leases.

*Land Sales*

16. The Trapp and Blankenship partnership owned stock in the National Bond and Mortgage Company which held a number of first mortgages on farm lands. In 1937 the stockholders determined to dissolve the corporation. Trapp and Blankenship was interested in securing a large number of scattered mineral interests as well as salvaging its investment in the corporation so the partnership surrendered its stock in exchange for mortgages and land held by the company. Many of the tracts had been abandoned, taxes had accumulated to a large amount and the titles were in an unsatisfactory condition. The mortgages and lands were transferred to W. W. Williams, Trustee for Trapp and Blankenship, for clerical reasons. Mr. Williams was office manager and bookkeeper for the partnership oil business and Mr. Trapp's individual interests. Along with his regular duties he began to foreclose the first mortgages, clear up the titles, pay taxes, collect rentals and generally supervise the properties. He spent an average of one and one-half days per week in these activities, but made no positive effort to sell them. The amount of his time consumed by sales was negligible and no other individual handled these lands on behalf of the partnership.

17. The partnership had acquired about 175 tracts and to date approximately 100 tracts—surface only—have been sold. In the year in question, 1940, the record shows twenty-one sales and collections on forty sales made in the three prior years. Sales were made to get money to pay taxes and other expenses, and to reduce the capital investment in the minerals retained. The partnership still owns all the mineral interests. No new lands were acquired. No improvements were made on the properties to aid saleability. No sales or promotional activities were used. Generally the sales were made when someone desiring to buy would express the desire to Mr. Williams who made the sales if the bid price was satisfactory.

18. The taxpayer never held himself out as a real estate dealer, never possessed any kind of license for such business, has never been a salesman, broker or developer of real estate, and the portion of his income attributable to the profits from these sales was very small.

19. The tracts were not held primarily for sale to customers in the ordinary course of the taxpayer's business. He properly reported the profits on the sales as capital gains.

*Conclusion of Law*

■ E. The issue is whether the profits received from the sale of the taxpayer's lots were, under the facts found, a sale of capital assets, only one-half of which profits may be subjected to income tax, or whether the profits from such sales arose from the sale of property held primarily for sale to customers in the ordinary course of the taxpayer's trade or business in which event the whole of the gain is subject to income tax as ordinary income. 26 U.S.C.A., Sec. 117. The issue is one of fact. Reynolds v. Commissioner, 1 Cir., 155 F.2d 620; Van Suetendael v. Commissioner, 2 Cir., 152 F.2d 654; Estate of Kleberg v. Commissioner, 7 T.C. 1488; and see Higgins v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783; Fuld v. Commissioner, 2 Cir., 139 F.2d 465.

The existence of certain circumstances such as the regularity and continuity of sales (Higgins v. Commissioner, supra; Brown v. Commissioner, 5 Cir., 143 F.2d

468), the nature of the acquisition of the property or purpose of acquisition (Kanawha Valley Bank v. Commissioner, 4 T.C. 252; Thompson Lumber Co. v. Commissioner, 43 B.T.A. 726; Jones v. Commissioner, 1 T.C. 1214; Three States Lumber Co. v. Commissioner, 7 Cir., 158 F.2d 61, reversing 5 T.C. 1391, the nature and extent of taxpayer's "business" (Flint v. Stone Tracy Co., 220 U.S. 107, 171, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312), the activity of the taxpayer in promoting the sales (W. D. Hadan v. Commissioner, 2 T.C. 1268; Oliver v. Commissioner, 1 T.C. 1215, affirmed 4 Cir., 138 F.2d 910; Swanston v. Commissioner, 1 T.C. 1216), and other circumstances are the factors to be considered in arriving at a decision. No one of these facts is decisive but the solution must depend upon all the pertinent facts and their relative importance in each case.

Here the taxpayer's business was oil development and production, not the real estate business; the property was acquired incident to the dissolution of an insolvent corporation in which taxpayer's partnership owned stock and was held for the purpose of securing a scattered spread of mineral interests for his oil business; sales were of the surface only; the taxpayer and his representatives were passive in the sales which have been irregular during the ten years since acquisition of the properties; sales were made to pay taxes and expenses in perfecting titles and to reduce the investment in the mineral interest. The lands were not held primarily for sale in the ordinary course of taxpayer's business. The profits, therefore, were capital gains as distinguished from ordinary income in the year in question. Fahs, Collector, v. Crawford, et al., 5 Cir., 161 F.2d 315; Three States Lumber Co. v. Commissioner, supra; Kanawha Valley Bank v. Commissioner, supra; The estate of Kleberg v. Commissioner, supra; Farley v. Commissioner, 7 T.C. 198.

Judgment will be entered as of the date of the filing of these findings of fact and conclusions of law, this the 11th day of September, 1948.