**GUTOWSKY v. JONES, Collector of Internal Revenue.**

Civ. 5019.

United States District Court
W. D. Oklahoma.

Sept. 29, 1951.

Stanley B. Catlett, Oklahoma City, Okl., for the plaintiff.

Robert E. Shelton, U. S. Atty., Oklahoma City, Okl., for the defendant.

WALLACE, District Judge.

This action arises under the Internal Revenue laws of the United States, and is brought in the District Court of the United States for the Western District of Oklahoma, for the purpose of securing a refund of income taxes paid the Federal Government for the calendar tax year of 1943. A. Gutowsky, hereinafter referred to as Gutowsky, was at all times pertinent to this action a citizen of the State of Oklahoma. He died and this action was revived in the name of his Administrator, C. E. Gutowsky, hereinafter referred to as plaintiff. Defendant, H. C. Jones, at all times pertinent to this action, was Collector of Internal Revenue for the District of Oklahoma. Judgment for defendant.

Gutowsky filed his return for the tax year of 1943, within the time prescribed by law, and, at that time, paid the sum of $3,-818.18. On November 13, 1946, defendant made a deficiency assessment against him in the amount of $76,018.18. He protested the assessment and, on March 17, 1949, a Conferee's Report was filed reducing the deficiency assessment to $43,543.82. Gutowsky paid this amount to the Collector of Internal Revenue, and, on June 26, 1950, filed a claim for refund in the amount of $25,-719.53. This claim was disallowed by the defendant, and Gutowsky thereupon brought this action in this court.

The point at issue is whether income resulting from the sale of certain oil and gas leases and royalties, held by Gutowsky for a period of more than six months, is chargeable as ordinary gain, taxable in full, or is to be treated as a capital gain, with the accompanying tax reduction.

The statutes pertinent to this controversy are to be found in Section 117, Title 26 of the United States Code, and are set out below.

"§ 117. *Capital gains and losses*

"(a) *Definitions.* As used in this chapter—

"(1) Capital assets. The term 'capital assets' means property held by the tax-payer (whether or not connected with his trade or business), but does not include—

"(A) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;

"(B) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 23(l), or real property used in his trade or business;

\*     \*     \*     \*     \*     \*

"(b) *Percentage taken into account.* In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net capital gain, net capital loss, and net income:

"100 per centum if the capital asset has been held for not more than 6 months;

"50 per centum if the capital asset has been held for more than 6 months.

\*     \*     \*     \*     \*     \*

"(j) *Gains and losses from involuntary conversion and from the sale or exchange of certain property used in the trade or business.*

"(1) *Definition of property used in the trade or business.* For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(l), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. Such term also includes timber with respect to which subsection (k) (1) or (2) is applicable, or (C) a copyright, a literary, musical, or artistic composition,

or similar property, held by a taxpayer described in subsection (a)(1)(C)."

Defendant predicated the deficiency assessment upon the sale by Gutowsky of 16 leases during the period of January 1, 1943, to June 1, 1943, all of which had been held by him for more than six months, and which he had acquired as part of a large block of leases. It was Gutowsky's established practice to drill wells on some of these leases, and to sell others in order to finance his drilling operations. In fact, on December 14, 1942, Gutowsky entered into an agreement with one Bourland which specifically stated that the parties were desirous of entering into a partnership for the purpose of selling a sufficient number of leases to finance the drilling of a test well. Plaintiff contends that Gutowsky was an "oil producer" and was not a "lease broker"; that, although he did sell some leases, it was for the sole purpose of financing his operations as a producer, and; that the leases that he sold were investment property, properly classified as capital assets. Defendant does not contend that Gutowsky was a "lease broker" as that term is generally understood. However, defendant does contend that these leases were "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business", such as would deprive them of any capital asset status, as provided in section 117(a)(1)(A) of the Internal Revenue Code.

It was not necessary that Gutowsky be engaged solely in the business of selling leases, for a taxpayer may have more than one business, even though it is not his principal business. Fahs v. Crawford, 5 Cir., 161 F.2d 315; Fackler v. Commissioner, 6 Cir., 133 F.2d 509. Such a business need not take all of the taxpayer's time and effort, but may be temporary or seasonal. Snell v. Commissioner, 5 Cir., 97 F.2d 891. Nor is it necessary that the taxpayer do the work himself, but he may employ an agent. Welch v. Solomon, 9 Cir., 99 F.2d 41. Generally, carrying on a business implies an occupational undertaking to which one devotes a considerable amount of time and effort, and with substantial regularity. The mere disposal of investment assets at infrequent intervals is not enough to constitute "doing business". Snell v. Commissioner, supra. In the case of Von Baumbach v. Sargent Land Co., 242 U.S. 503, 515, 37 S.Ct. 201, 204, 61 L.Ed. 460, Mr. Justice Day, in delivering the opinion of the court, stated: "* * * this court adopted with approval the definition, judicially approved in other cases, which included within the comprehensive term 'business' 'that which occupies the time, attention, and labor of men for the purpose of a livelihood or profit.'" This definition was followed and cited with approval in Richards v. Commissioner, 9 Cir., 81 F.2d 369, 106 A.L.R. 249.

Numerous tests have been established to determine whether the taxpayer has held certain property "primarily for sale to customers in the ordinary course of his trade or business." The most common test is that of the "frequency or continuity" of transactions. Brown v. Commissioner, 5 Cir., 143 F.2d 468; Fackler v. Commissioner, supra; Commissioner v. Boeing, 9 Cir., 106 F.2d 305; Ehrman v. Commissioner, 9 Cir., 120 F.2d 607, certiorari denied, 314 U.S. 668, 62 S.Ct. 129, 86 L.Ed. 534. Other tests used are: the intent with which the leases were purchased, Foran v. Commissioner, 5 Cir., 165 F.2d 705; Greene v. Commissioner, 5 Cir., 141 F.2d 645, dissenting opinion; activity of seller in promoting sales, Trapp v. United States, D.C. W.D.Okl, 79 F.Supp. 320.

In Guthrie v. Jones, D.C.W.D.Okl., 72 F.Supp. 784, 785, Judge Broaddus combined all of these various tests, as follows: "The existence of certain circumstances such as. the regularity and continuity of sales (Higgins v. Commissioner, supra [312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783]; Brown v. Commissioner, 5 Cir., 143 F.2d 468), the nature of the acquisition of the property or purpose of acquisition (Kanawha Valley Bank v. Commissioner, 4 T.C. 252; Thompson Lumber Co. v. Commissioner, 43 B.T.A. 726; Jones v. Commissioner, 1 T.C. 1214; Three States Lumber Co. v. Commissioner, 7 Cir., 158 F.2d 61, reversing 5 T.C. 1391), the nature and extent of taxpayer's 'business' (Flint v. Stone Tracy Co., 220 U.S.

107, 171, 31 S.Ct. 342, 55 L.Ed. 389, Ann. Cas. 1912B, 1312), the activity of the taxpayer in promoting the sales (Haden v. Commissioner, 2 T.C. 1268; Oliver v. Commissioner, 1 T.C. 1215, affirmed 4 Cir., 138 F.2d 910; Swanston v. Commissioner, 1 T.C. 1216), and other circumstances are the factors to be considered in arriving at a decision. No one of these facts is decisive but the solution must depend upon all the pertinent facts and their relative importance in each case."

Although it may not have been his principal occupation, Gutowsky was engaged in the business of selling oil and gas leases. It was his purpose, in purchasing these leases, to sell them to other persons at a profit whereby he might finance his drilling operations. If these sales had been so infrequent as to show that Gutowsky was operating solely under the momentary pressure of adverse conditions, this court might be inclined to view them merely as the disposal of investment assets, under the rule of Snell v. Commissioner, supra. However, these sales have been so frequent and continuous as to establish beyond doubt that this was procedure steadfastly and regularly followed by Gutowsky. The fact that it was his ultimate intention to employ the greater portion of these funds in financing his drilling operations, does not negative the conclusions that these leases were property which he held primarily for sale to customers in the regular course of business. During the tax year of 1943, Gutowsky sold a total of 105 leases, 96 of which he had held for less than one year. A large majority of these 96 leases had been held for less than six months, and several had been sold on the same day they were purchased. It is difficult for this court to believe that these leases were acquired for investment purposes.

■ A recent case, cited to the court by counsel for defendant, is helpful in the determination of this controversy. That is the case of Kidd v. Commissioner, decided September 29, 1948 (1948 P-H T.C. Memorandum Decisions, par. 48, 187). In that case, a partnership was formed for the purpose of exploring for oil, producing oil, and buying and selling leases. The method of operation employed by the partnership was analogous to that employed by plaintiff in the case at bar. Each time a drilling operation was undertaken, the firm would sell some of its leases in order to finance the well. The sales in that case were not nearly as frequent as those in the case at bar (only 71 sales in two years) and yet the Tax Court held that such leases were held by the firm primarily for sale to customers in the ordinary course of the trade or business. The court further determined that is "need not denominate the precise nature of the partnership business. It is sufficient to find that as an adjunct of its business the sales in question were a necessary activity." Therefore, this court may further base its decision upon the finding that the sale of these leases was an essential adjunct of A. Gutowsky's production business. A. Gutowsky admitted that without their sale he would not have had sufficient funds to finance his drilling operations. The determination whether a particular piece of property is a capital asset is an issue of fact which this court has resolved against the plaintiff. Reynolds v. Commissioner, 1 Cir., 155 F.2d 620; Guthrie v. Jones, supra.

■ Plaintiff further contends that, although these leases are not capital assets, they do constitute "property used in the taxpayer's trade or business", and, under the provisions of section 117(j), net gains derived from their sale may be treated as long-term capital gains. Plaintiff overlooks the fact that "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business" is excepted from the liberal treatment of section 117(j). Section 117(j) (1); Albright v. United States, 8 Cir., 173 F.2d 339. We have determined that these leases were so held by the taxpayer.

It is, therefore, the finding of this court that plaintiff is not entitled to a refund upon the tax assessed and paid for the year 1943.

Counsel are directed to submit a journal entry in conformity with this opinion within fifteen days from this date.