ALBERT T. ERICKSON AND STELLA E. ERICKSON, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 39677. Filed December 10, 1954.

*Stephen W. Franken, Esq.*, for the petitioners.
*Richard D. Hobbet, Esq.*, for the respondent.

---

OPINION.

BRUCE, *Judge:* The question for decision is whether the respondent erred in determining that the gain realized by petitioners in the taxable year 1948 from the sale of bulls was taxable as ordinary income. Petitioners contend that those sales are to be treated as sales of capital assets, viz, "property used in the trade or business," under section 117 (j) (1), Internal Revenue Code of 1939.[1] The petitioners claim that they were in the business of renting bulls for breeding purposes. Respondent argues that the bulls were held "primarily for sale to customers in the ordinary course of his [their] trade or business."

Whether or not petitioners come within section 117 (j) (1) depends on the purpose for which the property was held. *Rollingwood Cor-*

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

(j) GAINS AND LOSSES FROM INVOLUNTARY CONVERSION AND FROM THE SALE OR EXCHANGE OF CERTAIN PROPERTY USED IN THE TRADE OR BUSINESS.—

(1) DEFINITION OF PROPERTY USED IN THE TRADE OR BUSINESS.—For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (l), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or (C) a copyright, a literary, musical or artistic composition, or similar property, held by a taxpayer described in subsection (a) (1) (C). Such term also includes timber or coal with respect to which subsection (k) (1) or (2) is applicable and unharvested crops to which paragraph (3) is applicable. Such term also includes livestock, regardless of age, held by the taxpayer for draft, breeding, or dairy purposes, and held by him for 12 months or more from the date of acquisition. Such term does not include poultry.

Note: The last two sentences of section 117 (j) (1) quoted above were added by section 324 of the Revenue Act of 1951. Section 324 further provided that the "first sentence added to section 117 (j) (1) by the amendment made by this section shall be applicable with respect to taxable years beginning after December 31, 1941, except that the extension of the holding period from 6 to 12 months shall be applicable only with respect to taxable years beginning after December 31, 1950. * * *"

*poration* v. *Commissioner*, 190 F. 2d 263; *Mauldin* v. *Commissioner*, 195 F. 2d 714; *Nelson A. Farry*, 13 T. C. 8; *A. Benetti Novelty Co.*, 13 T. C. 1072. There is no fixed formula in making this determination. It is a question of fact.

Upon the evidence received at the hearing we have found as an ultimate fact that petitioners held the bulls primarily for sale to customers in the ordinary course of their business.

Petitioners bought bulls for approximately $123 each and sold them 1½ years later for about $250. In the interim they rented their bulls out to neighboring farmers for breeding purposes for a fee of $10 to $25 and sometimes loaned them for nothing. The farmers using the bulls fed and cared for them at no expense to petitioners. Petitioner Albert Erickson testified that he expected to make his profit from the sale of a bull and not from its rental. At no time were the bulls here involved used to breed petitioners' own cows.

The rental was merely a means of raising and feeding the bulls until they were salable. Petitioners did not, nor did they expect to, make their profit from the rental. Their profit came from the increase in size and weight of the bulls. Usually petitioners could rent the bulls out for only two pasture seasons, receiving at most total fees of $50 per bull. The rentals were but a small part of the income derived from the bulls. In 1948 petitioners received $31,311.58 in gross sales and a net profit of $11,561.32, while receiving only $2,200 in rentals. Petitioners argue that the disparity in rental income and the proceeds from the sales should be disregarded as not controlling, citing *Delsing* v. *United States*, 186 F. 2d 59. We do not find the *Delsing* case in point.

In that case the taxpayer held two groups of houses, one for sale and the other for rent. In one year the taxpayer sold houses from both groups, reporting income from the former as ordinary income and income from the latter as a section 117 (j) (1) capital gain. The Court of Appeals for the Fifth Circuit reversed the District Court and sustained the treatment by the taxpayer. In commenting that the disparity between income from sales and from rentals was not controlling, the court distinguished the activities of the taxpayer in selling houses held for sale and selling those held for rent. Here but one herd of bulls is involved and it was held for sale.

Renting these bulls in order to realize profit while growing and fattening them for market does not establish that the primary purpose in holding them was for rental for breeding purposes. Petitioners point out that they always tried to get bulls from good stock in order to get desirable breeders; but, if petitioners had not bought good breeders they would not have been able to rent their bulls out and have them raised by someone else.

Section 117 (j) (1) was not meant to apply to a situation where one of the essential or substantial objects in holding property is for sale. *Rollingwood Corporation* v. *Commissioner, supra.* The sales in this case were not merely incidental to the business of petitioner. They were the business. They were not isolated transactions. There was a definite routine established over 20 years whereby petitioners bought bulls, rented them, and sold them. Cf. *Gutowsky* v. *Jones*, 100 F. Supp. 852; *Brown* v. *Commissioner*, 143 F. 2d 468. Petitioners argue that the bulls were sold only when they became dangerous and were of no further use as breeders, citing *Pfister* v. *United States*, 102 F. Supp. 640, reversed without discussion on this point 205 F. 2d 538; and *United States* v. *O'Neill*, 211 F. 2d 701. In both of those cases the sales were forced sales necessitated by economic or administrative reasons. In the *Pfister* case the sale was made because of the shortage of ranch help, and in the *O'Neill* case water and feed conditions required the sale. Here the sales were not required by any unforeseen economic or administrative reason, but were planned. Whether the bulls were of any use as breeders is of no consequence except as their condition affected income during the holding period. Petitioners bought the bulls intending to sell them, after raising and fattening them. Renting them was but a means of getting the bulls raised and fattened at the expense of someone else.

Accordingly we hold that the $11,561.32 received by petitioners in 1948 should be taxed as ordinary income.

*Decision will be entered for the respondent.*