PHILBER EQUIPMENT CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 50634. Filed October 24, 1955.

*George F. Shinehouse, Jr., Esq.*, for the petitioner.
*William G. Handfield, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* During its fiscal years ending June 30, 1951, and June 30, 1952, petitioner sold through an agent a number of motor vehicles which it had acquired new and had leased in various quantities to different lessees for periods of, in each instance, approximately 1 year. Respondent contends that the vehicles were acquired for two purposes, first to lease them for a period substantially less than their useful lives, and thereafter to offer them for sale to the public at retail as used vehicles. Such sales, according to this theory, were of property held primarily for sale to customers in the ordinary course of petitioner's trade or business.

Petitioner, on the other hand, takes the position that the primary purpose of the acquisition and holding of the vehicles was to rent them, and that they constituted at all times property used by petitioner in its trade or business, and never property held primarily for sale to customers. The sales, according to petitioner, merely represented the most economically feasible thing to do at that time, since it was not then possible to rent the vehicles beyond the first relatively short rental period.

Section 117 (j) of the Internal Revenue Code of 1939 reads in part as follows:

SEC. 117. CAPITAL GAINS AND LOSSES.

(j) GAINS AND LOSSES FROM INVOLUNTARY CONVERSION AND FROM THE SALE OR EXCHANGE OF CERTAIN PROPERTY USED IN THE TRADE OR BUSINESS.—

(1) DEFINITION OF PROPERTY USED IN THE TRADE OR BUSINESS.—For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation * * * held for more than 6 months, * * * which is not * * * (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, * * *

It should be noted that the exception contained in (B) of section 117 (j) (1) does not require that such sales themselves constitute a trade or business of the taxpayer. Nor is it necessary that the taxpayer be in a selling type of business. It is sufficient if, whatever type of business the taxpayer happens to be engaged in, the sales in question were of property held primarily for sale to customers in the ordinary course of that trade or business.

"Primarily" as used in the above-cited section, has been held to mean "substantial" or "essential" rather than "principal" or "chief." See *Rollingwood Corp.* v. *Commissioner*, 190 F. 2d 263 (C. A. 9), affirming a Memorandum Opinion of the Tax Court, where the Court of Appeals said (p. 266) :

Although the requirements of the statute are to some extent overlapping, the emphasis in this case is whether the houses were held primarily for sale or

primarily for rent. Petitioners contend that the word "primarily" means "principal" or "chief", while the Commissioner contends it means "essential" or "substantial." For reasons hereinafter stated we think the latter view is more consonant with the legislative policy.

Moreover, it has been held that, while the purpose for which property is initially acquired and held is of considerable weight, such purpose may change over a period of time. In such case the determinative factor is the purpose for which the property is being held at the time it is sold rather than the purpose for which it was acquired and held in some former period. Cf. *Mauldin* v. *Commissioner*, 195 F. 2d 714 (C. A. 10), affirming 16 T. C. 698; *Differential Steel Car Co.*, 16 T. C. 413; *Stern Brothers & Co.*, 16 T. C. 295; *Carl Marks & Co.*, 12 T. C. 1196.

Keeping the above principles in mind we turn to the case at bar. After a careful review of the evidence we have come to the conclusion that the property involved was, during the relevant period, held primarily for sale to customers in the ordinary course of petitioner's trade or business, as contended by respondent.

Property may be acquired and held for more than one essential purpose. We find this to have been the case here. Petitioner when purchasing the vehicles in question knew that it probably would be able to lease them only for a period substantially less than their useful lives. We find that at the time it first acquired the vehicles petitioner did in fact intend to sell them at retail after a relatively short single rental period. We do not deem it necessary that petitioner must intend to sell the vehicles "no matter what." It is sufficient that it intended to sell them unless some other course should prove more advantageous, and that it so arranged its affairs. A comparable situation was considered in the *Rollingwood* case where the Court of Appeals said (190 F. 2d at p. 266) :

Suppose the taxpayer in the instant case intended to rent the houses for as long as he was required to do so under existing regulations and then to sell them. Or suppose his intention was to pursue whichever of these activities proved to be the most profitable, that is, if the *rental market* were good he would continue to rent but if the *sales market* were high he would sell. In either of these suppositions we think it is fair to say that one of the essential purposes (in acquiring or holding the houses) is the purpose of sale. Under such circumstances, if the taxpayer does dispose of the houses by sale, is it within the legislative *purpose* to allow him to treat the proceeds of these sales as a capital gain? We think not. [Italics in original.]

Even, however, were an intention to sell absent at the time the equipment was first acquired, the result in this case would have to be the same. As we have already noted in the *Mauldin, Differential Steel*, and *Carl Marks* cases, all *supra*, the determinative factor is the purpose for which the property is being held at the time of sale.

Had the intention to sell the property been absent at the time of original acquisition, we are satisfied from the record that such intention nevertheless was definitely in existence immediately upon reacquisition of the vehicles from the lessees. Such property was thereafter, and up to the time of actual sale, held primarily, indeed solely, for sale to customers in the ordinary course of petitioner's trade or business. Cf. *Mauldin* v. *Commissioner*, *supra*, 195 F. 2d at p. 717.

It is no answer to say, as petitioner attempts to do, that it was merely in the business of renting the vehicles in question. The fact is that it was in the business of renting vehicles *and* then selling them at retail, using the facilities of an agent to achieve the latter purpose. This is not a case where the owner merely disposed of the vehicles incidentally at the conclusion of the leases. The vehicles were substantial in number, and were sold profitably at retail in the ordinary course of business. Indeed, during the fiscal year 1952, the evidence shows that petitioner's only profit was derived from such sales, the leasing operations having resulted in a loss. The sales were a significant and regularly recurrent aspect of petitioner's over-all business. Cf. *John W. Williamson*, 18 T. C. 653, affirmed 201 F. 2d 564 (C. A. 4), certiorari denied 345 U. S. 970.

Petitioner sees far more significance than we do in the fact that Berman rather than petitioner carried on the actual selling activity and maintained necessary facilities. We are aware of no rule rendering inapplicable to the field of Federal income taxation the maxim *qui facit per alium facit per se*. Berman was the agent of petitioner with respect to every act in furtherance of the sale of petitioner's property. Its acts, in contemplation of law, were the acts of petitioner. Petitioner will not be permitted to deny the tax consequences of its agency arrangement because those consequences happen to be to its detriment, after it has reaped the fruits of such arrangement and benefited thereby. *Brown* v. *Commissioner*, 143 F. 2d 468 (C. A. 5); *Gutowsky* v. *Jones*, 100 F. Supp. 852 (W. D., Okla.). In the *Brown* case, *supra*, the Court said at page 470:

> While the petitioner did not personally conduct the business of selling lots she did conduct it through another. She sold to all comers, subdividing and developing to attract purchasers. Anyone who wished to buy could do so. Her sales were not isolated transactions; neither were they casual rather than continuing. They were substantial and frequent.

Petitioner has cited various decisions in support of its position. However, cases in this field rest largely upon their special facts (cf. *Rubino* v. *Commissioner*, 186 F. 2d 304 (C. A. 9), certiorari denied 342 U. S. 814; *King* v. *Commissioner*, 189 F. 2d 122, 124 (C. A. 5), certiorari denied 342 U. S. 829; *Mauldin* v. *Commissioner*, *supra*, at p. 716), and we are satisfied that the cases relied upon by petitioner are not controlling here. We hold that the sales in question were of prop-

erty held primarily for sale to customers in the ordinary course of petitioner's trade or business. Gain realized therefrom is taxable as ordinary income. The determination of a deficiency by the respondent must be sustained.[1]

*Decision will be entered for the respondent.*

---

[1] The result that we reach does not rest upon Rev. Rul. 229, 1954-1 C. B. 124, which would allow capital gains treatment to taxpayers who sell motor vehicles that were formerly rented, provided that three conditions are satisfied: (1) The taxpayer must be primarily engaged in the business of renting or leasing motor vehicles; (2) the vehicles must be sold at wholesale prices to wholesalers, jobbers, or dealers; and (3) the taxpayer must maintain no facilities for retail sales. The second condition certainly was not satisfied here, and the third condition was not satisfied, either, in view of our conclusion that petitioner was operating through an agent that did maintain facilities for retail sales. Thus, if this ruling were applied here, that would end the matter. Petitioner argues that the ruling is invalid. However, we need not consider that contention, since our decision does not depend upon the ruling and we therefore find it unnecessary to pass upon its validity.