OPINION. Murdock, Judge: The Commissioner takes the position that the arrangement between Zack, his two sons, and his son-in-law, whereby they were to share in the one-third interest in the bomb hoists here involved on a 40-20-20-20 percentage basis, was a sham and, accordingly, he has taxed one-third of the profits from the sale of the hoists to the petitioners as ordinary income from a trade or business. Zack’s sons and his son-in-law each acquired a 20 per cent interest in the bomb hoists in 1948 and continued to hold such interests until the sale or abandonment of the hoists. The agreement between Zack, his sons, and his son-in-law, as might be expected, lacked most of the formalization that such an agreement would have between parties who were not so closely related by family and business activity. But the evidence shows that they agreed to share the undertaking and they carried out that agreement, as the receipt of the cash distribution of their respective shares' verifies. The Commissioner erred by including the sons’ and son-in-law’s shares of the profit from the sales of the bomb hoists in the income of the petitioners. The Commissioner’s further position is that the income derived from the sale of the bomb hoists constituted ordinary income, instead of long-term capital gains as reported by the petitioners. His position is that transactions involving the bomb hoists resulted in the sales of other than capital assets within the provisions of section 117 (a) (1), Internal Revenue Code of 1939, because they were property held by Zack and his associates primarily for sale to customers in the ordinary course of their trade or business. The purchase and sale of the hoists was not a part of any other business regularly carried on by Zack, but it has long been recognized that a taxpayer may be engaged in several businesses. The question is whether Zack and his associates were selling the bomb hoists in the ordinary course of a business carried on by them. The only purpose in buying the bomb hoists was to resell them at a higher price. There was no “investment” such as might be made in other types of property, but on the contrary there was a general public offering and sales in such a manner that the exclusion of the statute cannot be denied. Anything which Zack or his associates did in promoting the sales of the bomb hoists must also be attributed to each of the others. Breakstone displayed the hoists, printed and distributed a quantity of brochures illustrating and describing the hoists, wrote letters to and personally contacted potential customers, and continued this until practically all the hoists were sold. Likewise, Zack had his salesmen, who had been furnished with the brochures, looking for customers, and Tyroler was active in working with Breakstone and negotiating sales. The activities amounted to the carrying on of a business of selling the bomb hoists and the sales were to customers in the ordinary course of that business. The sales were not of capital assets. Cf. Nathan D. Goldberg, 22 T. C. 533; Louis Greenspon, 23 T. C. 138; and Philber Equipment Corporation, 25 T. C. 88. Reviewed by the Court. Decision will be entered under Buie 50.