PHILBER EQUIPMENT CORPORA-
TION, Petitioner,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

No. 11860.

United States Court of Appeals
Third Circuit.

Argued June 5, 1956.

Decided Sept. 27, 1956.

Albert Barnes Zink, Philadelphia, Pa.
(George F. Shinehouse, Jr., Philadelphia,
Pa., on the brief), for petitioner.

Charles B. E. Freeman, Atty., Dept. of
Justice, Washington, D. C. (Charles K.
Rice, Asst. Atty. Gen., Lee A. Jackson, I.
Henry Kutz, Attys., Dept. of Justice,
Washington, D. C., on the brief), for re-
spondent.

Before MARIS, KALODNER and
HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

Were motor vehicles owned by the tax-
payer held "primarily for sale to custom-
ers in the ordinary course of his trade
or business" within the meaning of Sec-
tion 117(a) and (j) of the Internal Reve-
nue Code of 1939, 26 U.S.C.A. § 117(a,
j)?[1]

---

1. "§ 117. Capital gains and losses
   "(a) Definitions. As used in this chap-
ter—
   "(1) Capital assets. The term 'capital
assets' means property held by the tax-
payer (whether or not connected with his
trade or business), but does not include
stock in trade of the taxpayer or other
property of a kind which would proper-

ly be included in the inventory of the
taxpayer if on hand at the close of the
taxable year, or property held by the tax-
payer primarily for sale to customers in
the ordinary course of his trade or busi-
ness, or property, used in the trade or
business, of a character which is subject
to the allowance for depreciation pro-
vided in section 23(*l*), * * * or real

That is the single question presented by this petition for review of the decision of the Tax Court [2] which answered it affirmatively, thereby making gains on the sale of the vehicles taxable as ordinary income rather than "capital gains".

The facts may be summarized as follows:

Philber Equipment Corporation ("taxpayer") is a Pennsylvania corporation with its principal place of business in Pottstown, Pennsylvania. The Commissioner determined a deficiency in income tax and excess profits tax for the taxpayer's fiscal year ended June 30, 1951, in the amount of $17,716.55. Gains from taxpayer's sales made during the fiscal year ended June 30, 1952, are involved for the purpose of determining the amount of unused excess profits credit for that year available as a carry-back to the fiscal year 1951.

Taxpayer's original Articles of Incorporation provided that its purpose, among other things, was to "buy, sell, lease and exchange new and used vehicles". On March 26, 1951, the Articles were amended to change taxpayer's name from "Philber Equipment Manufacturing Co." to "Philber Equipment Corporation", and to delete from the statement of its corporate purpose any reference to buying, selling and exchanging motor vehicles.

Taxpayer was engaged in the business of furnishing trucks, tractors and trailers to the public on a lease basis, principally to fleet operators who would rent from three to fifty-five units. The leases, during the fiscal years 1951 and 1952, were all for a one-year term although a number of units were retained by the lessees for a few months longer than one year, pending their replacement with new vehicles under a new lease. The leases provided for the return of each unit to the taxpayer at the end of the rental period, or even earlier after certain usage. No right was given the lessee to purchase or acquire any interest in the leased equipment.

Taxpayer maintained no inventory or stock of equipment. It purchased each piece of equipment only as it had need for a particular unit to fill the requirements of an existing lease. During its fiscal years 1951 and 1952 the average number of units owned by taxpayer was one hundred seventy-five. Its gross rental income was $295,889.39 for the fiscal year 1951, and $267,754.53 for the fiscal year 1952. Except for $4,000 all of the rental income for the years involved was received from nine customers.

During the taxable years, existing conditions made it difficult or impossible to re-lease most of the equipment. Taxpayer knew that when equipment was purchased, it would probably be able to rent the equipment for a period substantially less than its useful life, and sale of the equipment would follow expiration of a lease.

Taxpayer did not have a sales force, a showroom or other selling facilities, and it held no franchise from any manufacturer, nor was it licensed under the Pennsylvania Motor Vehicle Sales Finance Act, 69 P.S. § 601 et seq. The vehicles previously rented were sold by taxpayer through its agent, Berman Sales Company ("Berman"). Berman, a large scale

---

property used in the trade or business of the taxpayer;

\* \* \* \* \*

"(j) Gains and losses from involuntary conversion and from the sale or exchange of certain property used in the trade or business.

"(1) Definition of property used in the trade or business. For the purposes of this subsection, the term 'property used in the trade or business' means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(l), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. \* \* \*"

2. 25 T.C. 88.

dealer in trucks, tractors and trailers, is a partnership, the interests of which are held by the same persons who hold the capital stock of taxpayer and in the same proportions as their stock holdings. There was an informal but consistently followed arrangement whereby Berman sold the trucks, tractors and trailers of taxpayer in the normal course of its business. Upon selling the property, Berman would deduct the selling cost and remit the balance to taxpayer. No commission or other benefit was received by Berman, except that whenever a vehicle was received as a trade-in, Berman would include the vehicle at its wholesale value rather than at its trade-in value in computing the price received and the amount payable to taxpayer. If the trade-in was later sold at the retail price, Berman would then realize a profit.

Taxpayer sold forty of its vehicles through Berman during the fiscal year 1951. The net gain to taxpayer was $16,323.53. For the fiscal year 1952, forty-five vehicles were sold resulting in a net gain to taxpayer of $33,247.31. Each unit sold had been held by taxpayer for a period in excess of six months and was subject to an allowance for depreciation.

As earlier stated, the Tax Court made the factual finding that the vehicles sold constituted " * * * property held primarily for sale to customers in the ordinary course of petitioner's trade or business, and the gain from the sales thereof is taxable as ordinary income."

█ With respect to that finding it must be noted it was in the nature of an ultimate finding of fact and since such finding is but a legal inference from other facts it is subject to review free of the restraining impact of the so-called "clearly erroneous" rule applicable to ordinary findings of fact by the trial court, as we recently held in Curtis Co. v. Commissioner, 3 Cir., 1956, 232 F.2d 167. To the same effect see Smith v. Commissioner, 5 Cir., 1956, 232 F.2d 142.

With respect to the question as to whether or not taxpayer held the property primarily for sale to customers in the ordinary course of its trade or business, the Commissioner contends that "primarily" means "substantial" or "essential" rather than "principal" or "chief". In Rollingwood Corp. v. Commissioner, 9 Cir., 1951, 190 F.2d 263, 266–267, the Commissioner's definition was adopted. Rollingwood was one of the numerous war-time housing operation cases where individuals normally in the business of selling houses were required to turn to rental activities due to war-time restrictions. Anticipation of selling activities with respect to the rental housing is an important consideration in many of these cases, so that the dual purpose of rental and sale is quite an inseparable factor in determining for what purpose the property is "primarily" held. Whether "primarily" means "substantial" or "principal" is not dispositive of the question, and attempts to seek an alternative definition of the statutory word is an illusive guide to the solution of a problem which must rest upon the variation of facts presented. Semantic excursions are often necessary to formulate a working guide under inexplicit statutory phrasing; however, words are seldom meaningful unless their application to the facts is for the purpose of more clearly posing the question, not answering it.

██ The basic problem is whether, as the Commissioner contends, the property was acquired for the dual purpose of leasing for a period substantially less than its useful life, and thereafter selling; or, as the taxpayer urges, its purchase, use and ultimate disposition were directed to the single purpose of the operation of a truck rental business. We are here concerned with a going operation which involves continuous rental, purchase and sale, and the determinative factor is the purpose for which the property was held at the time of its acquisition and during the period of its use. United States v. Bennett, 5 Cir., 1951, 186 F.2d 407; Latimer-Looney Chevrolet, Inc., 1952, 19 T.C. 120. The final sale of the property can only be decisive if the taxpayer's business was operated with the final gains from the sale of the vehi-

cles as a determining business purpose. We think the record supports the taxpayer's contention that the acquisition, use and disposition of its equipment was consistent with the business purpose of vehicle rental and not vehicle sale.

With respect to the acquisition of the property, it is critically significant that the taxpayer never purchased a vehicle until a leasing arrangement had been made and that the type of vehicle so purchased was dictated by the particular requirements of the lessee. As earlier stated, taxpayer carried no inventory or stock of equipment.

Concerning the use of the equipment, all property owned by taxpayer was used as rental equipment. No right was given the lessee to purchase or acquire any interest in the leased equipment. Upon expiration of the lease, the equipment was returned to taxpayer to be replaced, where another lease was agreed upon, with new equipment.

The frequency, continuity and substantiality of sales are important factors to consider in determining for what purpose property is primarily held. However, these are factors among many others to be taken into consideration. The nature of taxpayer's business required the substantial sales made, but such sales were not part of a business of selling trucks but rather the natural conclusion of a vehicle rental business cycle.[3] Further, the rental period was not the result of a voluntary act on taxpayer's part, but rather an unavoidable consequence of conditions existing in the business. The acquisition and disposition of equipment was an essential aspect of the business of renting equipment and the

officers of taxpayer were aware that property acquired must ultimately be disposed of. Standing alone, such disposition, even though a necessary and frequent element of taxpayer's business, cannot be considered inconsistent with the conduct of a rental business or make the sale factor a dominating business purpose of taxpayer.

The fact that it elected to sell its equipment through the agency of Berman is not a decisive factor in determining its business purpose. The circumstance that it did not through its own facilities conduct the selling operation is another factor supporting the conclusion that its primary business purpose was vehicle rental. To hold, as the Tax Court did, that employment of Berman's sales facilities amounts to taxpayer itself engaging in the act of selling ignores the realities of the situation. True, the interests in taxpayer and Berman were identical, but both were legitimate business enterprises, and there is no suggestion in the evidence of any lack of business purpose in the activities or relationship of the two entities. Taxpayer's rental business was a practical concomitant to its ownership interest in the Berman selling enterprise, and reliance on the advantages of disposing of equipment through Berman was a logical business arrangement.

The Tax Court, as an alternative ground, stated that even if the intention to sell had been absent at the time of the original acquisition, such intention did exist at the time of re-possession from the lessee, and the determining factor is then the purpose for which the property was being held at the time of sale rather

---

3. George Berman, taxpayer's president during the period involved, testified:

"It is our intention always that we will take a fleet back to dispose of it in some manner. If we can re-lease it favorable [sic], we rel-lease [sic] it, but if we can sell it more favorably, we will, of course, sell it." (N.T. p. 23)

"As I said a while ago, we go into a lease and we cannot determine what we are going to do with the used equipment until we get it back. We have to

do—as businessmen we must do what is feasible.

"At that time it was feasible to sell it. In today's market we are releasing it, but we couldn't at that stage of the game. Right now, we are re-leasing used equipment because new equipment is tight, and you can do it, but you cannot do it when the market is plentiful. And it always remains an open question until you have the equipment." (N.T. p. 25).

than the purpose for which it was originally acquired and held.

We cannot subscribe to this "alternative ground". To do so would make for judicial nullification of Section 117(j).

The essence of the Tax Court's alternative ground is that property changes character merely by the fact of its being exposed for sale. We agree with the taxpayer that such a concept is neither logical nor reasonable.

For the reasons stated the decision of the Tax Court will be reversed and the cause remanded with directions to proceed in accordance with this opinion.