John W. Roddy and Dorothy Roddy v. Commissioner.
Roddy v. Commissioner
Docket No. 80533.
United States Tax Court
T.C. Memo 1961-228; 1961 Tax Ct. Memo LEXIS 119; 20 T.C.M. (CCH) 1129; T.C.M. (RIA) 61228; August 15, 1961
John W. Roddy, pro se, Dallas, Pa. Edward L. Newberger, Esq., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax *120 for the year 1953 in the amount of $21,969.95 and for the year 1955 in the amount of $1,539.99. The issues for decision are (1) whether respondent properly determined that depreciation on cars used by Roddy Transportation Company, a business conducted by John W. Roddy as a sole proprietorship, should be on the basis of the useful life of the cars for the purpose for which they were used by the business with consideration being given to salvage value or as contended by petitioner on the basis of the economic life of the cars without consideration of resale or salvage value and (2) whether the gain from the sale of used automobiles by Roddy Transportation Company to retail customers through the Roddy Company, a wholly owned corporation of petitioner John W. Roddy, was ordinary income as determined by respondent, or was capital gain as reported by petitioners. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, John W. Roddy and Dorothy Roddy, are husband and wife residing at Dallas, Pennsylvania. Petitioners filed a joint income tax return for the year 1953 with the district director of internal revenue at Scranton, Pennsylvania. Petitioner *121 John W. Roddy (hereinafter referred to as petitioner) filed an individual income tax return for the taxable year 1955 with the district director of internal revenue at Scranton, Pennsylvania. In this return he claimed petitioner Dorothy Roddy as an exemption. During the years 1953, 1954, and 1955 petitioner John W. Roddy conducted a business as a sole proprietorship under the fictitious name of Roddy Transportation Company, hereinafter referred to as Transportation. The activities of Transportation consisted of the leasing of automobiles to others and the sale of these automobiles at the conclusion of the leasing periods. Petitioner during the years 1953, 1954, and 1955 was also president and sole owner of a corporation, The Roddy Company, which operated under a franchise from Chrysler Corporation for the retail sale of Plymouth and DeSoto cars. The Roddy Company also engaged in the business of servicing cars and selling used cars at retail. During the years 1953 and part of 1954 Transportation conducted its operations from two offices, the main office in Wilkes-Barre, Pennsylvania and a branch in California. Transportation purchased the cars it required for its business at *122 wholesale prices from various sources, including petitioner's wholly-owned corporation, The Roddy Company. The cars were leased for specified periods of time, usually a year, to business establishments and to individuals. The leases provided for the return of each vehicle at the end of the rental period. They did not give the lesses the right to purchase or acquire any interest in the leased equipment. During the year 1952 petitioner reached the decision that the California office was not too profitable, and he decided it should be discontinued, which it was in 1954. As of January 1, 1953, that office had on hand 177 cars. Disposal of the 177 cars was made through wholesalers. The petitioner reported the sales of the cars from the California office as long-term capital gains. The Commissioner has agreed that these were correctly reported, and this is not in controversy in the instant case. Except for negligible sales in 1953 through a wholesaler, all cars of the Wilkes-Barre office were sold to retail customers through The Roddy Company. Until a sale was made, title to the car remained with Transportation. Upon completion of a sale the net proceeds were turned over to Transportation, *123 The Roddy Company having first deducted a 5 percent selling commission, servicing and other expenses. The petitioner reported the sales of the cars from the Wilkes-Barre office as long-term capital gains. With the exception of gains of $617.87 on certain cars sold in 1953 through wholesalers, respondent has determined that all gains realized from the sales of Wilkes-Barre cars by Transportation constituted ordinary income. The following schedule shows the sale proceeds and cost of the cars sold by Transporation in the years 1953, 1954, and 1955: 1953
1954
1955
Sales
$299,859.87
$240,058.69
$223,349.40
Cost
433,622.72
391,635.28
320,673.69
Percent of
sales to
cost
69.2%
61.3%
69.7% With respect to cars sold through The Roddy Company, the sales figure represents net proceeds as heretofore set forth. With respect to cars sold through wholesale dealers, the sales figure represents total proceeds received. The cost shown has not been adjusted for depreciation. The cars sold by Transportation were, at time of sale, of the ages in months as follows: Age in Months
When Sold
1953
1954
1955
3
2
4
1
4
1
7
2
5
8
1
6
5
7
1
5
8
1
4
1
9
2
6
2
10
4
2
4
11
5
10
1
12
20
16
5
13
31
19
22
14
18
27
20
15
24
23
11
16
13
15
18
17
12
5
11
18
9
1
13
19
12
2
18
20
5
3
18
21
3
9
22
6
3
4
23
4
4
24
9
2
2
25
7
2
26
13
3
27
2
6
2
28
4
4
4
29
6
5
1
30
4
7
31
6
4
32
8
2
33
6
1
35
2
37
3
2
38
1
39
1
43
1
Totals
238
211
174
*124 The average age of the cars sold in each year was as follows: 1953
18.8 months
1954
16.0 months
1955
16.8 months
On his tax returns petitioner, in reporting his income from Transportation, claimed depreciation on autos as follows: Depreciation
Year
claimed
1953
$167,825.34
1955
136,122.67
These amounts were computed and the deductions claimed on the basis that the cars had an estimated useful life of 3 years, with no salvage value at the end of the 3-year period. The Commissioner determined that the allowance for depreciation should take into consideration the salvage value of the cars, and determined that the salvage value of each car was 60 percent of the cost of the car, or the undepreciated cost at January 1, 1953 (cost less depreciation already taken prior to 1953 by petitioner on his returns), whichever was the lesser. The Commissioner also determined that depreciation for 1953 and subsequent years should be computed on cost less salvage value as set forth above, spread over a total depreciable life of 18 months for each car. Depreciation allowed by the Commissioner and the excessive depreciation disallowed was as follows: *125 Excessive Depreci-
Depreciation
Excessive Depreci-
ation Disallowed
Allowed by
ation Disallowed
(Corrected for
Commis-
(Statutory
Mathemati-
Year
sioner
Notice)
cal Error)
1953
$93,123.37
$74,701.97
$74,701.97
1955
92,617.65
43,565.02
43,505.02
The following is a comparison of the results of the operations of the petitioner segregated as to car rentals and sales of cars as reported by petitioner on his returns and as determined by respondent for the years 1950 through 1955: Net Income or Loss
Net Gain or Loss
from Car Rentals
from Car Sales
Year
Per Return
Per Respondent
Per Return
Per Respondent
1950
($17,177.12)
$ 2,459.30
1951
( 29,471.62)
48,727.94
1952
( 57,188.28)
110,794.82
1953
( 81,227.55)
($ 6,525.58)
91,985.51
$46,655.52
1954
( 55,503.54)
( 10,119.87)
28,666.58
(27,716.59)
1955
( 50,049.15)
( 6,544.13)
48,815.19
16,164.10
The petitioner has failed to prove that respondent erred in his determination except to the extent of the mathematical error conceded by respondent. Opinion Section 23(1) of the Internal Revenue Code of 1939 and *126 section 167 of the Internal Revenue Code of 1954 both provide that there shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear, and tear (including a reasonable allowance for obsolescence) of property used in the trade or business. The major question involved in the depreciation issue in the instant case was decided in Massey Motors, Inc. v. United States, 364 U.S. 92 (1960). In the Massey Motors case, the Supreme Court held that a taxpayer was entitled to an allowance for depreciation sufficient to recover only the cost of the asset less the estimated salvage, resale or secondhand value and that the useful life of an asset must be related to the period for which it may be reasonably expected to be employed in the taxpayer's business. On the basis of the Massey case we hold that respondent's method of computing depreciation is correct. In the present case, the petitioner apparently objects to the "formula" used by respondent in computing the depreciation. If by this, petitioner is questioning the amount used as salvage value by respondent or the average useful life allowed, the evidence fails to show error *127 on the part of respondent. The average resale value for the years 1953, 1954, and 1955 of all cars sold was somewhat higher than 60 percent of the cost thereof and the average period of time the cars were used during the years 1953, 1954, and 1955 was about 17 months, being 18.8 months in 1953, 16.0 months in 1954, and 16.8 months in 1955. There is nothing in the record to indicate that use by respondent of 60 percent of cost as the salvage or resale value was unreasonable or that the average useful life in petitioner's business of 18 months was unreasonable. In the year 1953, some of the cars sold had been depreciated to an amount below 60 percent of the cost thereof by January 1, 1953. For these cars respondent used as the salvage value the remaining undepreciated cost at January 1, 1953. On the basis petitioner had been claiming depreciation, any car held for over approximately 14.4 months at January 1, 1953, would have an undepreciated cost of less than 60 percent of the cost thereof. There is nothing in the record to show how many cars were in this category. The record does show that the average age of cars in months when sold in 1953 was 18.8 months, but so far as the record *128 shows, all the oldest cars might have been sold in December 1953 in which event only 40 cars would have been depreciated below 60 percent of the cost thereof at January 1, 1953, and a number of these not much below 60 percent of cost. Petitioner has failed to prove that the "formula" used by respondent was erroneous. Section 117(a) of the Internal Revenue Code of 1939 and section 1221 of the Internal Revenue Code of 1954 exclude from the definition of capital asset property used in a taxpayer's trade or business of a character which is subject to the allowance for depreciation. Section 117(j) of the Internal Revenue Code of 1939[1] and 1231 of the Internal Revenue Code of 1954 provide, under the conditions therein set forth, for the treatment of gains from the sale of depreciable property used in a taxpayer's trade or business as gains from the sale of a capital asset. These sections exclude from the definition of property used in the trade or business, property held primarily for sale to customers in the ordinary course of the taxpayer's trade or business. Whether property is held by a taxpayer primarily for sale to customers in the *129 ordinary course of his trade or business is basically a question of fact. Greene-Haldeman, 31 T.C. 1286, 1292 (1959), affd. 282 F. 2d 884 (C.A. 9, 1960). Among the criteria that have been employed in determining this question of fact are the intent of the seller, the purpose or purposes for which the property was acquired, held and sold, the frequency of sales, whether the sales are in furtherance of an occupation of the taxpayer, and the extent of the sales activities on the part of the seller. Greene-Haldeman, supra.The record in the instant case is barren of evidence concerning petitioner's activities in many of these respects. The record shows that petitioner purchased cars from his wholly owned corporation, The Roddy Company, and that The Roddy Company engaged in the retail sale of Plymouth and DeSoto cars and in the business of servicing cars and selling used cars at retail. The record shows that the activities of transportation consisted of leasing automobiles to others and the sale of these automobiles at the conclusion of the leasing period and that except for negligible sales in 1953 through a wholesaler, all cars of the Wilkes-Barre *130 office were sold to retail customer through The Roddy Company. Whether the leasing of cars or the sale of the cars at the conclusion of the leasing period was the primary business of Transportation is not shown. *131 In the instant case respondent has not questioned petitioner's right to capital-gain treatment with respect to cars sold to wholesalers but has determined that gains from the sale of cars through The Roddy Company constituted ordinary income. The basis of the respondent's determination is not shown but he argued on brief that these cars were assets held primarily for sale to customers in the ordinary course of petitioner's trade or business. The assignments of error in the petition, which are denied in respondent's answer, allege error on the part of respondent in determining for the years 1953 and 1955 that the income realized from the sale of these cars was income from the sale of property held primarily for sale to customers in the ordinary course of petitioner's trade or business. No evidence in addition to the stipulated facts was produced at the trial as to the activities of Roddy Transportation Company or The Roddy Company. Petitioner testified that * * * it wasn't my intention to have separate operations of these particular units. I happen to be a DeSoto-Plymouth dealer and the Chrysler Corporation demanded me and told me to separate the units back in 1950. Due to operating *132 in one particular location and very closely associated we carried all the records in regard to both businesses in one place and there was a very close interrelationship. That is one particular reason I have no objection to the Government contending there weren't any capital gains if that was the ruling. But we also had a number of additional expenses that happened. If capital gains was disallowed we should take another look at it. There were a number of additional expenses that were incurred in regard to the leasing operation that weren't charged to the operation in the manner in which they should be charged if the tax is going to be considered in that manner. Whether petitioner intended to imply by this testimony that Transportation's leasing of cars was to some extent merely a use made of The Roddy Company cars until such time as it was desirable to sell these cars, we need not determine. The record is totally devoid of evidence to show that the leasing of the cars was not secondary to holding such cars for sale. There were 238 cars sold by petitioner in 1953 and 174 in 1955. This fact might be of little significance if the number of cars sold was a necessary result of petitioner's *133 renting of cars, but insofar as the instant record shows, the cars were only rented to make a use of them until the most propitious time for their sale. The only profitable part of petitioner's business for any of the years from 1950 through 1955 as reported on his tax returns was from the sale of cars, and for the years 1953 and 1955 this situation existed even after respondent changed petitioner's method of computing depreciation, there being a loss shown from both segments of petitioner's business in 1954 after the change in the method of reporting depreciation. There may have been a reason for this disparity in profit between the car rental and car sales business other than that petitioner's primary business was the sale of cars with the rental of cars being secondary thereto, but if so, the record does not disclose such fact. The record in the instant case is totally devoid of facts tending to show that petitioner's activities were comparable to those of the taxpayers in McCullough Transfer Company, 27 T.C. 822 (1957), and Philber Equipment Corporation, 237 F. 2d 129 (C.A. 3, 1956), reversing 25 T.C. 88, (1955). Petitioner produced evidence *134 to show that for years subsequent to 1955, he incurred losses in Transportation's business in all but 1 year, treating the income from the sale of the cars as capital gains and in all but 2 years treating such gains as ordinary income. He also showed that The Roddy Company sustained losses in each of the years 1956 through 1960. However, he has not shown any allocation of income between the car rental and car sales business of Transportation. Petitioner in the instant case has totally failed to meet his burden of proof to show error in respondent's determination that the gains from the cars sold by him through The Roddy Company were taxable as ordinary income. The petitioner alleges that a copy of the notice of deficiency is attached thereto and this allegation is denied by respondent in his answer. The record contains no copy of the notice of deficiency and the statements with respect to respondent's determination contained in our Findings of Fact are taken in their entirety from the stipulated facts. Dorothy Roddy did not file a joint return with her husband, John W. Roddy, for the year 1955. Whether she was not included in the notice of deficiency for the year 1955 and is, therefore, *135 not properly a petitioner for that year, or whether she was improperly included in the notice of deficiency addressed to her husband, we cannot determine from this record. Since this is a matter that should be readily ascertainable from the notice of deficiency, it well be left for the parties to reflect properly in their Rule 50 computation, which in any event will be necessary herein in view of the concession by respondent as to a mathematical error in the deficiency notice. Decision will be entered under Rule 50. Footnotes
1. Sec. 117(j) Gains and Losses From Involuntary Conversion and From the Sale or Exchange of Certain Property Used in the Trade or Business. - (1) Definition of property used in the trade or business. - For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(1), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business * * * (2) General rule. - If, during the taxable year, the recognized gains upon sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets * * * Section 1231 of the Internal Revenue Code of 1954↩ has substantially the same provisions.