**INTERNATIONAL SHOE MACHINE CORPORATION, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 73-1337.**

United States Court of Appeals, First Circuit.

Argued Jan. 8, 1974.

Decided Jan. 23, 1974.

---

158

Evan Y. Semerjian, Boston, Mass., with whom James D. St. Clair and Hale & Dorr, Boston, Mass., were on brief, for appellant.

Joseph M. McManus, Atty., Tax Div., Dept. of Justice, with whom Scott P. Crampton, Asst. Atty. Gen., James N. Gabriel, U. S. Atty., Meyer Rothwacks, and Ernest J. Brown, Attys., Tax Div., Dept. of Justice, were on brief, for appellee.

Before COFFIN, Chief Judge, ALDRICH and McENTEE, Circuit Judges.

COFFIN, Chief Judge.

Appellant taxpayer contends that the Commissioner of Internal Revenue erroneously treated income realized from the appellant's sales of certain shoe machines as "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business", 26 U.S.C. § 1231(b)(1)(B), thereby taxing it as ordinary income instead of treating it under the capital gains provisions of the Code, and assessing deficiencies against the taxpayer. After having paid the deficiencies, the appellant filed claims for refunds, which were denied, and then instituted the present case. The district court upheld the Commissioner's disposition.

It is undisputed that during the years in question, 1964 through 1966, appellant's main source of income derived from the leases of its shoe machinery equipment, rather than from their sales. The revenue from sales of the leased

machinery comprised, respectively, only 7 per cent, 2 per cent, and 2 per cent of appellant's gross revenues. In fact, because the appellant preferred the more profitable route of leasing its machines, it never developed a sales force, never solicited purchases, set prices high to make purchasing unattractive, and even attempted to dissuade customers from purchasing them.

Yet the district court found that, beginning in 1964, when the investment tax credit made it more attractive for shoe manufacturers to buy shoe machinery rather than to lease it, the selling of machinery became an accepted and predictable, albeit small, part of appellant's business. Since appellant's chief competitor was selling leased shoe machines, it was necessary for appellant to offer its customers the same option. During the years in issue, appellant never declined to quote a price, nor did it ever decline to make a sale if the customer was persistent. Unlike previous years, purchase inquiries were referred to the appellant's vice president for sales, normally charged with selling new, non-leased machines, whereupon a price was negotiated. A schedule was prepared, indicating the sales price of leased machines, based upon the number of years that the machines had been leased. In total, 271 machines were sold to customers who, at the time of the sales, had been leasing the machines for at least six months.

The case raises what has become a repeating source of difficulty in applying § 1231(b)(1)(B), which denies highly favored capital gains tax treatment to "property held . . . primarily for sale to customers in the ordinary course of his trade or business". In particular, does the word "primarily" invoke a contrast between sales and leases, as the appellant contends, or between sales made in the ordinary course of business and non-routine sales made as a liquidation of inventory? And, if the latter, how can sales made in the ordinary course of business be distinguished from a liquidation of inventory?

In support of its contention that "primarily" refers to a contrast between sales and leases, appellant relies upon Malat v. Riddell, 383 U.S. 569, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966). There, the taxpayer purchased a parcel of land, with the alleged intention of developing an apartment project. When the taxpayer confronted zoning restrictions, he decided to terminate the venture, and sold his interest in the property, claiming a capital gain. The lower courts found, however, that the taxpayer had had a "dual purpose" in acquiring the land, a "substantial" one of which was to sell if that were to prove more profitable than development. Therefore, since the taxpayer had failed to establish that the property was not held primarily for sale to customers in the ordinary course of his business, his gain was treated as ordinary income. The Supreme Court vacated and remanded the case, stating that the lower courts had applied an incorrect legal standard when they defined "primarily" as merely "substantially" rather than using it in its ordinary, everyday sense of "first importance" or "principally". Although the Court in Malat was dealing with § 1221, rather than § 1231, the same clause appears in both sections. Appellant argues that the present case is analogous, since the "first" and "principal" reason for holding the shoe machinery was clearly for lease rather than for sale.

We cannot agree that Malat is dispositive. Even if "primarily" is defined as "of first importance" or "principally", the word may still invoke a contrast between sales made in the "ordinary course of . . . business" and those made as liquidations of inventory, rather than between leases and sales. Malat itself concerned the dual purposes of developing an apartment complex on the land and selling the land. Although these two possible sources of income might be characterized as income from "lease" or "sale", a more meaningful distinction could be made between on-going income generated in the ordinary course of business and income from the termina-

tion and sale of the venture. *See* Continental Can Co. v. United States, 422 F. 2d 405, 411 (Ct.Cl.1970); Recordak Corp. v. United States, 325 F.2d 460, 463 (Ct.Cl.1963).

We recognize that *Recordak,* invoking a contrast between "selling in the ordinary course of business and selling outside that normal course" was cited by the Supreme ·Court in *Malat* within a footnote which also listed the courts of appeals decisions then in conflict over . the meaning of "primarily", *supra,* 383 U.S. at 571 n. 3, 86 S.Ct. 1030, 16 L.Ed. 2d 102. Given, however, that *Recordak* was not directly included within the list, but merely cited as a case which had also addressed the question, we think that *Recordak's* interpretation of the contrast invoked by the word "primarily" remains undisturbed by the Court's opinion. Beyond semantics, an additional justification for the interpretation becomes obvious when one applies appellant's logic to a not unrealistic business situation: to rest the word "primarily" on the distinction between lease and sale income would lead to the absurd result that whenever lease income exceeded sale income on the same item, the sale income could be treated as capital gain.

■ The real question, therefore, concerns whether or not the income from the sales of appellant's shoe machinery should have been characterized as having been generated in the "ordinary course of . . . business". Appellant contests the conclusion of the district court that selling was "an accepted and predictable part of the business" by pointing out that sales were made only as a last resort, after attempts to dissuade the customer from purchasing had failed. We think that the district court was correct in its finding. While sales were made only as a last resort, it seems clear that after 1964 such sales were expected to occur, on an occasional basis, and policies and procedures were developed for handling them. Purchase inquiries were referred to the vice president for sales, a price schedule was drawn up, and discounts were offered to good customers. Appellant may not have desired such sales. It is likely that appellant would never have developed a sales policy for its leased machines had it not been forced to do so by the pressure of competition. But it was justifiable to find that such occasional sales were indeed "accepted and predictable".

■ Even "accepted and predictable" sales might not, however, occur in the "ordinary course of . . . business". For example, a final liquidation of inventory, although accepted and predictable, would normally be eligible for capital gains treatment. Appellant's final contention, therefore, is that the sales in question represented the liquidation of an investment. Appellant points out that the machines were leased for an average of eight and one half years before they were sold, during which time depreciation was taken on them and repairs were made. Thus, appellant seeks to bring itself within the scope of the "rental-obsolescence" decisions, which hold that the sale of rental equipment, no longer useful for renting, is taxable at capital gains rates. Hilliard v. Commissioner of Internal Revenue, 281 F.2d 279 (5th Cir. 1960); Philber Equipment Corporation v. Commissioner of Internal Revenue, 237 F.2d 129 (3d Cir. 1956); Davidson v. Tomlinson, 165 F.Supp. 455 (S.D.Fla.1958).

■ In the "rental obsolescence" decisions, however, equipment was sold only after its rental income-producing potential had ended and "such sales were . . . the natural conclusion of a vehicle rental business cycle". *Philber, supra,* 237 F.2d at 132. Moreover, the equipment was specifically manufactured to fit the requirements of lessees; it was sold only when lessees no longer found the equipment useful. *Id.* In the present case, however, the shoe manufacturing equipment was sold, not as a final disposition of property that had ceased to produce rental income for the appellant, but, rather, as property that still retained a rental income producing potential for the appellant. Had appel-

lant chosen not to sell the shoe machinery, the machinery would have continued to generate ordinary income in the form of lease revenue. Thus, the sale of such machinery, for a price which included the present value of that future ordinary income, cannot be considered the liquidation of an investment outside the scope of the "ordinary course of . . . business".

Affirmed.